*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

UNPUBLISHED
July 16, 2026
10:59 AM

Plaintiff-Appellee,

v

No. 368551
Kent Circuit Court
LC No. 17-011526-FC

RAMON CATRELL LOGAN II,

Defendant-Appellant.

Before: ACKERMAN, P.J., and REDFORD and FEENEY, JJ.

PER CURIAM.

Defendant appeals as of right the trial court's resentencing order, where the court sentenced defendant to serve 375 months to 100 years in prison for his second-degree murder conviction. We affirm.

## I. FACTS

This Court previously: (1) affirmed defendant's convictions for second-degree murder, MCL 750.317, and possession of a firearm during the commission of a felony (felony-firearm), MCL 750.227b; but (2) vacated defendant's sentence for second-degree murder and remanded "for the trial court to articulate its reasons for the extent of the sentencing departure or resentence the defendant." *People v Logan*, unpublished per curiam opinion of the Court of Appeals, issued January 14, 2021 (Docket No. 345014), p 1 (*Logan I*).

When defendant first appealed his convictions and sentences, this Court summarized the facts as follows:

> This case arises from the fatal shooting of Keith Kirkwood on August 22, 2016 at 1645 College Avenue. In the College Avenue incident, defendant, then 17-years-old, and codefendant Mikey Davis, then 15-years-old, approached Kirkwood and his cousin Ricky Johnson, and asked if they wanted to purchase a bike. Johnson and Kirkwood were drinking beer. Johnson tried to get defendant and Davis to leave the bike there and return the next day for the money. This offer upset defendant and Davis who thought Johnson and Kirkwood were treating them like

-1-

naïve children. After Johnson pulled $25 out of his wallet, defendant and Davis both drew guns, and one of them announced that this was now a robbery. Davis pistol whipped Kirkwood and defendant hit Johnson in the mouth with the butt of a gun. After Kirkwood repeatedly told defendant and Davis that there was no money, Davis and defendant shot Kirkwood multiple times. Kirkwood later died from his gunshot wounds. [*Logan I*, unpub op at 1-2.]

Two days later, defendant was involved in a "second bike related shooting . . . ." *Id*. at 2. "Defendant's cousins, his codefendant's father, his girlfriend, and two confidential informants testified that defendant told them that he killed Kirkwood." *Id*.

Defendant was charged with felony murder and armed robbery, but a jury found him guilty of the lesser offense of second-degree murder and the additional charge of felony-firearm. *Id*. Regarding defendant's second-degree murder conviction, MCL 750.317 authorized a sentence of life or any term of years, and the recommended minimum sentencing guidelines range was 225 months (18 years and 9 months) to 375 months (31 years and three months), or life in prison.[1] *Id*. at 17. The trial court sentenced defendant, above the recommended guidelines range, to serve 456 months (38 years) to 1,200 months (100 years) in prison. *Id*.

Thereafter, defendant appealed as of right his convictions and second-degree murder sentence. *Id*. at 1. This Court affirmed defendant's convictions, but vacated his sentence for second-degree murder and remanded to the trial court "for articulation as to the reasons for the extent of its departure or resentencing." *Id*. at 17-20.

On remand, the trial court resentenced defendant to a within-guidelines and presumptively valid sentence of 375 months (31 years and three months) to 100 years in prison for his second-degree murder conviction. Defendant appeals, arguing once again that he is entitled to resentencing.

## II. STANDARD OF REVIEW

"Sentencing decisions are reviewed for an abuse of discretion." *People v Boykin*, 510 Mich 171, 182; 987 NW2d 58 (2022). "An abuse-of-discretion standard recognizes that there may be more than one principled outcome[,] and the trial court may not deviate from that principled range of outcomes." *Id*. "A trial court abuses its discretion by violating the 'principle of proportionality,' which requires that a sentence be proportionate to the seriousness of the offense and the circumstances of the offender." *People v Brcic*, ___ Mich App ___, ___; ___ NW3d ___ (2026) (Docket Nos. 362727; 366230); slip op at 10 (citations omitted). "This review, a 'reasonableness' review, applies to both sentences within and outside the guidelines." *Id*. "Claims alleging a

---

[1] Defendant's total offense variable (OV) score was 120 points, placing him at OV Level III. His total prior record variable (PRV) score was 15 points, placing him at PRV Level C. Second-degree murder is a Class M2 felony. MCL 777.16p. The minimum sentence range grid for Class M2, MCL 777.61, provides a range of 225 months to 375 months, or life, for offenders at OV Level III-PRV Level C.

violation of constitutional due process are reviewed de novo," *People v Dixon-Bey*, 340 Mich App 292, 296; 985 NW2d 904 (2022), including "[w]hether a defendant's sentence constitutes cruel and/or unusual punishment under the Eighth Amendment of the United States Constitution or Article 1, § 16 of the Michigan Constitution," *People v Stovall*, 510 Mich 301, 312; 987 NW2d 85 (2022).

## III. PROPORTIONALITY

On appeal, defendant first argues that his sentence was unreasonable and disproportionate, especially considering that he was a juvenile when the offense was committed. We disagree.

## A. LEGAL STANDARDS

"Where the Legislature has assigned a range of sentencing outcomes for any given conviction, the trial court has authority to sentence a defendant within that range." *Boykin*, 510 Mich at 183. The trial court must "exercise discretion in a way that ensures the individualized sentence conforms with the principle of proportionality." *Id*. The statutory sentencing range for second-degree murder is "life, or any term of years . . . ." MCL 750.317.

The "basic considerations" relevant to determining an appropriate sentence are as follows: "(a) the reformation of the offender, (b) protection of society, (c) the disciplining of the wrongdoer, and (d) the deterrence of others from committing like offenses." *People v Snow*, 386 Mich 586, 592; 194 NW2d 314 (1972). Sentences may not violate "the 'principle of proportionality,' which requires that a sentence be proportionate to the seriousness of the offense and the circumstances of the offender." *Brcic*, ___ Mich App at ___; slip op at 10 (citations omitted). The test for proportionality requires consideration of the following: "(1) the severity of the sentence relative to the gravity of the offense; (2) sentences imposed in the same jurisdiction for other offenses; (3) sentences imposed in other jurisdictions for the same offense; and (4) the goal of rehabilitation, which is a criterion specifically rooted in Michigan's legal traditions." *People v Kardasz*, ___ Mich ___, ___; ___ NW3d ___ (2025) (Docket No. 165008); slip op at 33 (quotation marks and citation omitted).

The reasonableness review "applies to both sentences within and outside the guidelines." *Brcic*, ___ Mich App at ___; slip op at 10. "The sentencing guidelines are only advisory; however, those guidelines remain a highly relevant consideration in a trial court's exercise of sentencing discretion." *Id*. (quotation marks and citation omitted). "A within-guidelines sentence carries a rebuttable presumption of proportionality." *Id*. "The defendant bears the burden of demonstrating that their within-guidelines sentence is unreasonable or disproportionate." *Id*. (quotation marks and citation omitted). "A defendant may overcome the presumptive proportionality of a within-guidelines sentence by presenting unusual circumstances that would render the presumptively proportionate sentence disproportionate." *Id*. (quotation marks and citation omitted).

In *Miller v Alabama*, 567 US 460, 465; 132 S Ct 2455; 183 L Ed 2d 407 (2012), the United States Supreme Court concluded that a mandatory sentence of life without parole (LWOP) for a defendant who was under the age of 18 at the time of the crime violated the Eighth Amendment's prohibition against cruel and unusual punishment. In *People v Taylor*, 510 Mich 112, 126; 987

NW2d 132 (2022), our Supreme Court summarized the United States Supreme Court's holding in *Miller* as follows:

> [In *Miller*, 567 US 460,] the Supreme Court held that the Eighth Amendment prohibits mandatory LWOP sentences for crimes committed when the offender was under 18 years old. Mandatory LWOP penalty schemes "preclude a sentencer from taking account of an offender's age and the wealth of characteristics and circumstances attendant to it." *Id*. at 476. This "poses too great a risk of disproportionate punishment." *Id*. at 479. "In imposing a State's harshest penalties, a sentencer misses too much if he treats every child as an adult." *Id*. at 477.
>
> The Supreme Court set forth circumstances that a trial court should consider before concluding that it is appropriate to sentence a juvenile offender to die in prison. *Id*. at 477-478. Those "*Miller* factors" are: (1) the juvenile's "chronological age and its hallmark features—among them, immaturity, impetuosity, and failure to appreciate risks and consequences"; (2) the juvenile's family and home environment—"from which he cannot usually extricate himself—no matter how brutal or dysfunctional"; (3) "the circumstances of the homicide offense, including the extent of his participation in the conduct and the way familial and peer pressures may have affected him"; (4) "the incompetencies of youth," which affect whether the juvenile might have been charged with and convicted of a lesser crime, for example, because the juvenile was unable to deal with law enforcement or prosecutors or because the juvenile did not have the capacity to assist their attorney in their own defense; and (5) the juvenile's "possibility of rehabilitation." *Id*.

*Miller* did not "foreclose a sentencer's ability" to impose a life sentence without parole for "the rare juvenile offender whose crime reflects irreparable corruption," but when the young offender's "diminished culpability and heightened capacity for change" were properly considered, "appropriate occasions for sentencing juveniles to this harshest possible penalty will be uncommon." *Parks*, 510 Mich at 239-240 (quotation marks and citation omitted).

The Michigan Legislature established juvenile sentencing and resentencing procedures consistent with *Miller*. MCL 769.25 applies the *Miller* principles prospectively. In *Montgomery v Louisiana*, 577 US 190, 208-209; 136 S Ct 718; 193 L Ed 2d 599 (2016), the United States Supreme Court held that *Miller* applies retroactively to all persons sentenced to LWOP for offenses committed before they were 18 years old. See *Parks*, 510 Mich at 239. Accordingly, MCL 769.25a applies the *Miller* principles retroactively. See *Parks*, 510 Mich at 240. The *Parks* Court summarized the requirements of these statutes as follows:

> The statutes require the court to sentence a defendant to at least a 60-year maximum term and a minimum term of not less than 25 years or more than 40 years, unless the prosecuting attorney files a motion seeking a sentence of life without parole. MCL 769.25a(4)(b) and (c); MCL 769.25(3) and (9). If the prosecutor seeks a sentence of life without parole, the trial court must conduct a hearing and consider the *Miller* factors, any other relevant criteria, and the defendant's record while incarcerated. MCL 769.25a(4)(b); MCL 769.25(6). [*Parks*, 510 Mich at 240-241.]

The Court noted that it previously held in *Taylor*, 510 Mich at 129, "that the combination of *Miller* and MCL 769.25 creates a rebuttable presumption against life-without-parole sentences for juvenile offenders and that the prosecution, as the moving party, must overcome this presumption by clear and convincing evidence." *Parks*, 510 Mich at 241.

The Michigan Supreme Court extended these safeguards to defendants who were 18 years old at the time they committed first-degree murder. *Id*. at 244. The Court further extended the safeguards to 19-year-olds and 20-year-olds. *People v Taylor*, ___ Mich ___, ___; ___ NW3d ___ (2025) (Docket Nos. 166428; 166654); slip op at 2, 12-14, 37-38. But, in *People v Abraham*, ___ Mich App ___, ___; ___ NW3d ___ (2025) (Docket No. 364574); slip op at 1, 5-8, which was decided while *Taylor* and its companion case were pending in the Supreme Court, this Court declined to extend *Parks* to a defendant who was convicted of first-degree murder for a homicide he committed in 1991, when he was 22 years old. Also, in *People v Adamowicz*, 346 Mich App 213, 219-220; 12 NW3d 35 (2023), this Court rejected the argument for precluding mandatory life without parole for 21-year-old defendants.

In *Boykin*, 510 Mich at 188-189, our Supreme Court held that a trial court's "consideration of youth and its attendant circumstances is also required by this state's sentencing jurisprudence" when a defendant is sentenced to a term of years under MCL 769.25 and MCL 769.25a. The Court explained how the four considerations stated in *Snow*, 386 Mich at 592, are especially relevant for young offenders, who have good potential for reformation. *Boykin*, 510 Mich at 188-189.

Michigan jurisprudence has expanded the principles underlying *Miller* and its progeny to young offenders found guilty of second-degree murder. In *Stovall*, 510 Mich at 308, the Michigan Supreme Court considered whether a life sentence with the possibility of parole for second-degree murder was cruel or unusual punishment for a defendant who was under 18 years old when he committed the offense. The Court analyzed the following factors:

> (1) the severity of the sentence imposed compared to the gravity of the offense, (2) the penalty imposed for the offense compared to penalties imposed on other offenders in Michigan, (3) the penalty imposed for the offense in Michigan compared to the penalty imposed for the same offense in other states, and (4) whether the penalty imposed advances the penological goal of rehabilitation. [*Id*. at 314.]

The Court determined that the first and second factors weighed against imposition of a parolable life sentence for a juvenile convicted of second-degree murder because "parolable life sentence for second-degree murder is often *more* severe than the minimum sentences now given to most juveniles who commit *first-degree* murder: 25 to 40 years." *Id*. at 314-316. Additionally, defendants sentenced under MCL 769.25 or MCL 769.25a received the statutory maximum term of 60 years, guaranteeing release after 60 years of imprisonment, but a defendant sentenced to parolable life has no guarantee of release before death.[2] *Id*. at 317-318. Regarding the third factor,

---

[2] MCL 769.25(9) provides that when the sentencing court imposes a term of years, "the maximum term shall be not less than 60 years and the minimum term shall be not less than 25 years or more

the Court determined that "there is a clear national trend toward treating juveniles less harshly than adults and extending *Miller* beyond just the mandatory LWOP context." *Id*. at 318. Regarding the fourth factor, the Court determined, *inter alia*, that a parolable life sentence for a juvenile convicted of second-degree murder does not advance the penological goal of rehabilitation because "prisoners who receive parolable life sentences are given lower priority when it comes to educational and rehabilitative programming," which are vital to enhance the juvenile's growth and rehabilitative potential. *Id*. at 320. Accordingly, the Court concluded that a life sentence with the possibility of parole for second-degree murder was cruel or unusual punishment for a defendant who was under 18 years old when he committed the offense. *Id*. at 308, 322.

In *People v Eads*, ___ Mich App ___, ___; ___ NW3d ___ (2025) (Docket No. 357332); slip op at 1-2, 13, lv gtd 25 NW3d 118 (2025), this Court vacated a sentence of 50 to 75 years' imprisonment for second-degree murder, MCL 750.317, committed when the defendant was a juvenile. The defendant was originally sentenced as an adult in 1992. *Id*. at ___; slip op at 2-3. The trial court's sentence departed from the recommended minimum-sentence range under the judicial guidelines in effect at the time the sentencing offense was committed. *Id*. at ___; slip op at 3. In 2021, the defendant unsuccessfully sought relief from judgment on the ground that his sentence was unconstitutional and disproportionate. *Id*. at ___; slip op at 4. This Court initially denied the defendant's delayed application for leave to appeal, but the Supreme Court remanded the case to this Court "for consideration as on leave granted with additional instructions that this Court shall consider whether the defendant is entitled to relief under [*Boykin*] or [*Stovall*]" *Id*. (quotation marks and citation omitted).

On remand, this Court concluded that it could not "find sound reason to deem [the defendant's] sentence constitutionally permissible when the parolable life sentence at issue in *Stovall* was not." *Id*. at ___; slip op at 9. This Court determined that "a term-of-years sentence of 50 to 75 years for a juvenile convicted of second-degree murder is an unduly severe penalty when compared to the gravity of the offense and the penalty imposed on other offenders in Michigan." *Id*. This Court explained that the defendant's sentence was not materially distinguishable from the sentence in *Stovall* because the defendant was "effectively serving a life sentence." *Id*. This Court cited the United States Sentencing Commission's definition of a life sentence "as a period of incarceration of 470 months (approximately 39 years) or more—a period of incarceration well short of Eads's 50-year minimum, let alone his 75-year maximum." *Id*. Additionally, the life expectancy for a general-population prisoner was 64 years, and likely shorter for a prisoner committed as a minor. *Id*.

This Court also emphasized that the term-of-years sentence, like the parolable life sentence in *Stovall*, left the defendant with a lack of procedural safeguards available to persons convicted of first-degree murder. *Id*. at ___; slip op at 11. This Court explained that none of the other jurisdictions' second-degree murder penalties were comparable to the defendant's 50-year

---

than 40 years." Therefore, it is possible for a defendant sentenced under this provision to receive a maximum term of more than 60 years. In contrast, MCL 769.25a(4)(c) provides that if the trial court resentences the defendant to a term of years, "the maximum term shall be 60 years and the minimum term shall be not less than 25 years or more than 40 years."

minimum term; only one state, Tennessee, had a maximum term in excess of 50 years. *Id*. at ___; slip op at 12. This Court reasoned that the defendant's 50-to-75-year term would not allow the defendant "a meaningful opportunity to obtain release based on demonstrated maturity and rehabilitation." *Id*. (quotation marks and citation omitted). Accordingly, this Court concluded that the defendant's term-of-years sentence could not satisfy constitutional requirements when the sentence in *Stovall* failed to do so. *Id*. at ___; slip op at 13.

This Court further held that the defendant's 50-to-75-year term violated the principle of proportionality because it did not take into account his individual circumstances, including his youth. *Id*. at ___; slip op at 14-15. This Court addressed the trial court's failure to consider the defendant's age as follows:

> [I]t is clear from the existing record that the court in this case did not consider Eads's youth and its attendant characteristics as potentially *mitigating* factors. In justifying its sentence, the court described the murder as "the most unprovoked crime" it had ever seen . . . . The court openly acknowledged that Eads's background and the circumstances of the murder demonstrated that Eads was immature and impulsive, lacked discipline and self-restraint, and had been negatively influenced by gang members from a young age. Such observations reflect the very "characteristics of youth" that a sentencing court must consider as potentially mitigating the sentencing offense. The trial court, however, dismissed the very notion that such characteristics might have a mitigating effect and instead considered them as *aggravating* factors in support of a significant departure sentence—an approach plainly contrary to *Miller* and its progeny. [*Id*. at ___; slip op at 15 (citations omitted).]

Accordingly, this Court reversed the trial court's order denying the defendant's motion for relief from judgment, vacated his sentence for second-degree murder, and remanded to the trial court for resentencing. *Id*. The Supreme Court granted the prosecutor's application to appeal, instructing the parties to include in their briefs the issues of whether this Court erred in granting relief under *Stovall* and *Boykin*. *Eads*, 25 NW3d 118 (Mich, 2025). Oral arguments were held April 8, 2026.

In *Echols*, ___ Mich App at ___; slip op at 1, 6-8, this Court vacated a sentence of 75 to 150 years for second-degree murder for a defendant who committed the murder one month after he turned 18 years old. The defendant's minimum sentencing guidelines range was 10 to 25 years' imprisonment, or parolable life. *Id*. at ___; slip op at 2. This Court held that *Eads*'s rationale applied "with only greater" force to the more severe sentence. *Id*. at ___; slip op at 6. This Court found that the sentence was excessively harsh because the defendant would not become eligible for parole until well past the life expectancy of incarcerated persons. *Id*. This Court emphasized that the defendant committed a lesser offense than first-degree murder, but he received a minimum sentence that was 15 years higher than the minimum sentence under MCL 769.25 and MCL 769.25a, and a maximum sentence that was 90 years higher than the maximum sentence under MCL 769.25 and MCL 769.25a. *Id*. at ___; slip op at 7. This Court also held that the defendant's sentence violated the principle of proportionality. *Id*. at ___; slip op at 8. The prosecutor's application to the Supreme Court for leave to appeal this Court's judgment in *Echols* is held in abeyance pending the Supreme Court's decision in *Eads*. *People v Echols*, 32 NW3d 83 (Mich, 2026).

In *People v Campbell*, ___ Mich App ___, ___; ___ NW3d ___ (2025) (Docket No. 368742); slip op at 1-2, this Court held that a sentence of 65 to 100 years' imprisonment for second-degree murder was unreasonably excessive for a defendant who was 18 years old when he committed the homicide. The defendant's minimum sentence range under the judicial sentencing guidelines was 10 years to life. *Id*. at ___; slip op at 5. This Court determined that the trial court erred in focusing only on the egregiousness of the murder, without considering the defendant's "youth and its attendant characteristics" as mitigating factors. *Id*. at ___; slip op at 8-9 (quotation marks and citation omitted). This Court compared the defendant's sentence to the defendants' sentences in *Eads* and *Echols*, noting that it was more severe than was generally authorized for persons convicted of first-degree murder when they were between 18 and 20 years old. *Id*. at ___; slip op at 8. Accordingly, this Court vacated the defendant's sentence and remanded for resentencing, instructing the trial court to "consider [the] defendant's youth and its attendant characteristics at the time that he committed the offense as mitigating factors." *Id*. at ___; slip op at 13.

In *People v Nard*, ___ Mich App ___, ___; ___ NW3d ___ (2025) (Docket No. 369185); slip op at 2-3, remanded on other grounds 28 NW3d 731 (Mich, 2026), the then 17-year-old defendant sexually assaulted two young boys and forced one to submit to sexual penetration. The defendant perpetrated other cruel acts against the boys, and then killed them, by drowning one and hanging the other in a tree. *Id*. In 1976, the defendant was convicted of two counts of second-degree murder and sentenced to two terms of life in prison with the possibility of parole. *Id*. at ___; slip op at 1. In 2023, in light of *Stovall*, the defendant was resentenced to concurrent terms of 60 to 150 years. *Id*. Although the defendant had been released on parole, he appealed his new sentences. *Id*. This Court reasoned that the defendant's parole and release from incarceration in 2024 disproved his argument that his sentence was a de facto life sentence. *Id*. at ___; slip op at 5. This Court held that the "heinous circumstances" of the defendant's brutal murders of two helpless children justified the severity of his sentences. *Id*. at ___; slip op at 6. This Court determined that the trial court adequately considered the defendant's youth, and did not err in ultimately concluding that the egregiousness of the defendant's crimes outweighed the mitigating factor of youth. *Id*. at ___; slip op at 6, 8.

The defendant in *Nard* also argued that he should not receive a sentence for second-degree murder that was longer than the maximum sentence allowed for a juvenile convicted of first-degree murder. *Id*. at ___; slip op at 6. This Court rejected the argument, stating that MCL 769.25(9) allows a court to "impose *either* a term-of-years sentence or a sentence of imprisonment for life without parole." *Id*.

## B. ANALYSIS

As previously explained, defendant's sentence is improper if it is so excessive as to constitute cruel or unusual punishment, if it violates the nonconstitutional principle of proportionality, or if it was imposed without consideration of the characteristics of youth as mitigating factors. As the summary of caselaw indicates, the analyses of these issues often overlap.

Defendant's minimum sentence of 31.25 years for second-degree murder is markedly shorter than the previously discussed minimum sentences of 50 years (*Eads*, ___ Mich App at ___; slip op at 1), 65 years (*Campbell*, ___ Mich App at ___; slip op at 1), 75 years (*Echols*, ___ Mich

-8-

App at ___; slip op at 1), and life with the possibility of parole (*Stovall*, 510 Mich at 307). Defendant's sentence falls slightly below the midpoint (32.5 years) of the 25 to 40-year minimum-sentence range in MCL 769.25(9). Although this comparison does not reveal as strong a disparity between defendant's sentence and a first-degree murder sentence as shown in *Eads*, *Echols*, and *Campbell*, it does demonstrate a possibility that defendant will serve a longer sentence than persons convicted of first-degree murder.

In this case, the severity of defendant's sentence correlates to the gravity of his offense. See *Kardasz*, ___ Mich at ___; slip op at 34-35. Defendant shot and killed the victim in an argument about the sale of a bicycle; as the trial court commented, there was no provocation or any circumstance triggering defendant's fatal attack. When considering sentences imposed in the same jurisdiction for similar offenses, we note that defendant's sentence was substantially shorter than the sentences deemed excessive in *Eads*, *Echols*, and *Campbell*. His minimum sentence is also shorter than the 40-year upper limit for a minimum sentence under MCL 769.25(9) and MCL 769.25a(4)(c). When considering sentences imposed in other jurisdictions, our Supreme Court has determined that most states had a maximum term of 30 to 40 years. *Stovall*, 510 Mich at 319-320. We acknowledge that the goal of rehabilitation could be undermined by a 31-year sentence. See *id.* at 320. At resentencing, a report[3] was submitted noting that defendant had not been able to begin some recommended programs because prisoners with earlier release dates had priority; however, defendant testified that he had completed his GED, enrolled in college classes, and worked with mentors.

Evaluating all these factors, we conclude that the trial court did not abuse its discretion or violate the principle of proportionality. See *Brcic*, ___ Mich App at ___; slip op at 10. Defendant killed a person during an argument that defendant started. *Logan I*, unpub op at 1-2. A 31.25-year minimum sentence is within a principled range of outcomes. See *Brcic*, ___ Mich App at ___; slip op at 10.

The rule in *Miller* that the sentencing court must consider the characteristics of youth when sentencing a young offender applies to defendants who are sentenced to terms of years and to defendants convicted of second-degree murder for crimes they committed when they were under the age of 21 years. *Boykin*, 510 Mich at 190-193; *Stovall*, 510 Mich at 315-322; *Echols*, ___ Mich App at ___; slip op at 4. Once again, the relevant considerations in sentencing a young defendant are: (1) immaturity and impetuosity, (2) family and home environment, (3) circumstances of the homicide, (4) disadvantage in dealing with the legal system, and (5) possibility of rehabilitation. See *Miller*, 567 US at 476-477; *Taylor*, 510 Mich at 126. Additionally, the four considerations stated in *Snow*, 386 Mich at 592, are especially relevant for young offenders, who have good potential for reformation. *Boykin*, 510 Mich at 188-189. These considerations are: "(a) the reformation of the offender, (b) protection of society, (c) the disciplining of the wrongdoer, and (d) the deterrence of others from committing like offenses." *Snow*, 386 Mich at 592. Although the Michigan Supreme Court has determined that trial courts are required to consider the defendant's youth as a mitigating factor in these instances, the Court

---

[3] The report was authored by Kenneth Romanowski, Ph.D., a counselor for the Michigan Department of Corrections.

has also made it clear that trial courts are not required to "articulate their bases for considering an offender's youth during sentencing hearings . . . ." *Boykin*, 510 Mich at 190.

In defendant's resentencing memorandum, defendant attached a report entitled "Summary of Adolescent Developmental and Neurodevelopmental Science in re Juvenile Life Without Parole," authored by Dr. Daniel P. Keating, Ph.D., of the Departments of Psychology, Psychiatry, and Pediatrics at the University of Michigan. That lengthy report detailed how neurological developments in a person's early 20s enable their prefrontal cortex to significantly improve its capacity for making sound judgments. Defendant also attached an eight-page "expert report," authored by Kenneth Romanowski, Ph.D., a counselor for the Michigan Department of Corrections, detailing defendant's disciplinary history and participation in rehabilitative services during his imprisonment. At resentencing, the trial court noted that it considered both of these reports as follows:

> I have read your memorandum. I have also read the report from Doctor Romanowski who I have had him testify live in this court in the last couple of hearings I have had in the last few months on juvenile lifers.

> Also, I am very familiar with Doctor Keating. I have had Doctor Keating testify. I have read numerous of his articles. I am well aware of the issue with regards to brain development.

> *   *   *

> As I mentioned, I have read the memo from Doctor Keating. Doctor Keating talks about in younger people how the prefrontal cortex has not been developed until and as he's testified in this courtroom till about age 25. That impacts the ability to make intelligent decisions and to appreciate consequences.

> Doctor Romanowski who you've supplied a report to also has testified in this court. This [c]ourt's found him several times to be very credible . . . . Doctor Romanowski who is actually a—in charge of prisons across the State of Michigan for almost 42 years and now does ex—expert opinions with regards to these juvenile matters.

The trial court went on to state that at the time that defendant committed this offense, he had "one prior felony, two prior misdemeanors[,] and a juvenile court record," noting that defendant had "been in jail already four times and probation." The court then reiterated the facts and circumstances of this case and found that the sentencing guidelines did not take into account defendant's "lack of remorse, bragging about the offense afterwards[,] or the cold-blooded nature of the crime." The trial court explained that it heard testimony from "numerous witnesses about how [defendant] had basically been bragging about the shooting," which caused the court to "realize[] that [defendant was] actually proud of this, quite frankly."

Taken together, the trial court clearly considered defendant's youth as a mitigating factor. See *id*. at 188-190. Accordingly, defendant is not entitled to be resentenced on that basis.

IV. CONSIDERATION OF ACQUITTED CONDUCT

In his Standard 4 brief,[4] defendant further argues that the trial court improperly based its sentencing decision on its belief that defendant was guilty of first-degree murder, even though the jury convicted him of the lesser offense of second-degree murder. We disagree.

A. ANALYSIS

In *Dixon-Bey*, 340 Mich App at 294, the defendant was charged with first-degree murder, but she was ultimately convicted of the lesser offense of second-degree murder. The trial court imposed a sentence of 35 to 70 years in prison, in excess of the recommended minimum sentencing guidelines range. *Id*. This Court vacated the defendant's sentence and remanded to the trial court to articulate its reasons for the upward departure. *Id*.; see also *People v Dixon-Bey*, 321 Mich App 490, 494-495; 909 NW2d 458 (2017). The trial court resentenced the defendant to 30 to 70 years' imprisonment, in excess of the recommended minimum sentencing guidelines range. *Dixon-Bey*, 340 Mich App at 295. The defendant again appealed, and the following events ensued:

> After this Court's opinion in defendant's prior appeal, but before the trial court held the resentencing hearing, our Supreme Court decided *People v Beck*, 504 Mich 605; 939 NW2d 213 (2019), cert den sub nom *Michigan v Beck*, [589] US [1244]; 140 S Ct 1243; 206 L Ed 2d 240 (2020). *Beck* held that, unlike uncharged conduct, a trial court is forbidden from using acquitted conduct when crafting a sentence. *Beck*, 504 Mich at 609, 629. Our Supreme Court explicitly held that it violates a defendant's right to due process when a judge increases a defendant's sentence "because the judge believes that the defendant really committed one or more of the crimes on which the jury acquitted." *Id*. at 609. As this Court has observed, there may be situations in which it is not obvious what conduct should be considered "acquitted." [*People v*] *Brown*, 339 Mich App [411,] 421-422[; 984 NW2d 486 (2021)]. However, this is not one of those situations. The jury acquitted defendant of first-degree murder and convicted her of second-degree murder. It could not be plainer that the jury acquitted defendant of first-degree murder because it found that the element of premeditation was not established. Nevertheless, the trial court, in its own words, "gave defendant an additional 10 years in prison for a cold blooded, premeditated stabbing of a victim of this community . . . ." The trial court's blatant refusal to follow *Beck* persisted despite both attorneys advising the trial court that *Beck* prohibited the use of acquitted conduct when crafting a sentence. [*Id*. at 297.]

Accordingly, this Court vacated defendant's sentence and remanded for resentencing before a different judge. *Id*. at 305.

Contrary to defendant's assertions otherwise, this case is completely distinguishable from *Dixon-Bey*. Defendant draws attention to the trial court's statement that this case involved "a cold-blooded murder," but unlike the trial court in *Dixon-Bey*, the trial court in this case made no

---

[4] See Administrative Order No. 2004-6, 471 Mich ci, cii, Standard 4 (2004).

indication that it believed that this case involved any sort of premeditation. See *id*. at 297. "[T]he elements of first-degree murder are (1) the intentional killing of a human (2) with premeditation and deliberation." *People v Oros*, 502 Mich 229, 240; 917 NW2d 559 (2018) (quotation marks and citation omitted). Accordingly, premeditation and deliberation are the distinguishing factors between first-degree and second-degree murder. *Id*. at 241. Therefore, the trial court's classification of this crime as "a cold-blooded murder" was not inconsistent with defendant's acquittal of first-degree murder. Moreover, at resentencing, the trial court specifically stated that it would not take defendant's acquitted conduct into account. Accordingly, defendant's argument is without merit.

Affirmed.

/s/ Matthew S. Ackerman
/s/ James Robert Redford
/s/ Kathleen A. Feeney